**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOANNE COUSINS, on behalf of the ESTATE OF MATTHEW COUSINS and on behalf of his DOHSA beneficiaries, TANYA COWBROUGH, on behalf of the ESTATE OF ABBIGAIL COWBROUGH and on behalf of her DOHSA beneficiaries, KYLE HAGEN, on behalf of the ESTATE OF KEVIN HAGEN and his DOHSA beneficiaries, AMANDA MacDONALD, on behalf of the ESTATE OF BRENDEN IAN MacDONALD, and on behalf of his DOHSA beneficiaries, KATHRYN BOWEN, on behalf of the Est. of Maxime Miron-Morin and on behalf of his DOHSA beneficiaries, and MICHAEL CUSTANCE, on behalf of the ESTATE OF MATTHEW PYKE, and on behalf of his DOHSA beneficiaries | : : : : : : : : : : : : : : : : : : : : | CIVIL ACTION |
| **v.** | : : | |
| SIKORSKY AIRCRAFT COFRPORATION doing business as Sikorsky, a Lockheed Martin Company, HELICOPTER SUPPORT, INC., doing business as Helicopter Support, Inc., a Lockheed Martin Company and SIKORSKY INTERNATIONAL OPERATIONS, INC., doing business as Sikorsky International Operations, a Lockheed Martin Company | : : : : : : : : : : | NO. 23-2629 |

**MEMORANDUM OPINION**

Savage, J.                                                    March 26, 2025

        Defendant Sikorsky Aircraft Corporation lost its *forum non conveniens* bid to

dismiss this case and allow plaintiffs to file a new action in Nova Scotia, Canada.  Now it

seeks to transfer the case to the District of Connecticut where its headquarters are

located.  Because Sikorsky has not demonstrated that the convenience of the parties and

the witnesses outweighs the plaintiffs' choice of forum, we shall deny the motion.

## Background

The factual background of this products liability and wrongful death action is detailed in our Memorandum Opinion ruling on the *forum non conveniens* motion.[1]  We do not reiterate those facts.  In summary, the action arises out of the crash of a CH-148 helicopter manufactured and designed by Sikorsky for the Canadian military in the Ionian Sea off the coast of Greece, killing the plaintiffs' decedents.  Plaintiffs allege the crash was caused by a defectively designed fly-by-wire Electronic Flight Control System (EFCS) which overrode the pilot's manual commands while he was performing a maneuver.[2]

Plaintiffs, administrators of the decedents' estates who reside in Canada, filed this action in the Eastern District of Pennsylvania, where Sikorsky had a facility in Coatesville it had dubbed as the "Home of the CH-148."[3]  During the two years the fateful helicopter was at the Coatesville facility, Sikorsky installed final software upgrades, conducted final flight testing, and delivered the helicopter to the Canadian military.[4]  Sikorsky has since closed its Coatesville facility.[5]

Sikorsky moved to dismiss this action on *forum non conveniens* grounds, arguing that the case should be litigated in Canada where the plaintiffs reside and evidence in

---

[1] *Cousins on behalf of Est. of Cousins v. Sikorsky Aircraft Corp.*, -- F. Supp. 3d --, Civ. No. 23-2629, 2024 WL 4429061 (E.D. Pa. Sept. 30, 2024).

[2] Compl. ¶¶ 2–4, 15–16, ECF No. 1.

[3] *Id.* ¶ 8.

[4] Decl. of Roger D. Lange in Supp. of Sikorsky's Mot. to Dismiss ¶¶ 9–11 (attached as Ex. B to Defs.' Mem. of L. in Supp. of Their Mot. for Transfer of Venue, ECF No. 47-1 ["Sikorsky's Br."]), ECF No. 47-3 ["First Lange Decl."].

[5] *Id.* ¶ 13.

possession of the Canadian military is located.[6]  We denied Sikorsky's motion, concluding that the difficulties of litigating in the United States would not cause oppression and vexation out of all proportion to the plaintiffs' convenience and did not override the plaintiffs' choice of forum.[7]

Sikorsky now moves, pursuant to 28 U.S.C. § 1404(a), to transfer venue to the District of Connecticut, where it has its principal place of business.[8]  It argues that that district would best serve the convenience of the parties and witnesses, and the interests of justice.

Sikorsky submits the declaration of Roger Lange, a Sikorsky engineer who states that the CH-148 and the EFCS were designed in Sikorsky's Connecticut facility.[9]  He claims that although nonparties BAE Systems in New York and the Canadian Department of National Defense (DND) participated in the CH-148's design and development, Sikorsky maintained control over the work from its Connecticut headquarters.[10]  All Sikorsky employees who liaised with BAE and the DND did so from Connecticut.[11]  He states that no design activities took place in Pennsylvania, and no current or former Sikorsky employees who participated in the CH-148's design are located in

---

[6] Defs.' Mem. of L. in Supp. of Their Mot. to Dismiss Pursuant to *Forum Non Conveniens* 1–2, ECF No. 16-1 ["Sikorsky's FNC Br."].

[7] *Cousins*, 2024 WL 4429061, at *18.

[8] Sikorsky's Br. 1–2; Compl. ¶ 39.

[9] Decl. of Roger D. Lange in Supp. of Sikorsky's Mot. to Transfer Venue ¶¶ 5–10, 15–16 (attached as Ex. A to Sikorsky's Br.), ECF No. 47-3 ["Second Lange Decl."].

[10] *Id.* ¶¶ 15–17.

[11] *Id.* ¶¶ 10, 17.

Pennsylvania.[12]

Sikorsky argues that because plaintiffs' allegations focus on the design of the CH-148 and the EFCS, all US-based liability evidence is located in Connecticut where Sikorsky designs its aircraft products. It contends that because plaintiffs sued in a venue that is neither their home nor the place where the claim arose, their choice of forum is entitled to little deference.

Plaintiffs counter that Pennsylvania has significant ties to the litigation, justifying their choice of forum. They argue that Sikorsky has not demonstrated the unavailability of Connecticut-based nonparty witnesses, and that there are a number of nonparty witnesses located in Pennsylvania. In short, they contend Sikorsky has not demonstrated sufficient inconvenience or injustice to override their choice of forum.

## Analysis

The standard governing a motion for transfer under Section 1404(a) is distinct from that governing a *forum non conveniens* motion. *Dahl v. United Techs. Corp.*, 632 F.2d 1027, 1029 n.1 (3d Cir. 1980). A district court has broader discretion in applying Section 1404(a) than it does in applying the *forum non conveniens* doctrine. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 (1955)).

A defendant moving for transfer of venue must show that (1) the case could have been brought in the proposed transferee forum; (2) the proposed forum will be more convenient for the parties and the witnesses; and (3) transfer will be in the interest of justice. 28 U.S.C. § 1404(a); *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48,

---

[12] *Id.* ¶¶ 19–20.

57 (3d Cir. 2018) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995)).

This action could have been brought in the District of Connecticut.  Sikorsky has its headquarters there.  *See* 28 U.S.C. § 1391(b)(1), (c).  So, we must consider the convenience of the parties and the witnesses (the private interests) and the interests of justice (the public interests).  If these considerations favor transfer, we may transfer the case.  *In re Howmedica Osteonics Corp*, 867 F.3d 390, 401–02 (3d Cir. 2017) (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 & n.6 (2013); *Jumara*, 55 F.3d at 879).

Among the "private interest" factors considered in determining whether transfer is more convenient are: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) the place where the claim arose; (4) the relative ease of access to the sources of proof; (5) the convenience of the parties in light of their relative financial status and physical location; (6) the availability of compulsory process for the attendance of witnesses; (7) the convenience of the witnesses; and (8) the practical problems that make trial of a case expensive and inefficient.  *Id.* at 402.

Unlike the private interest factors, the public interest factors are not "tied to the parties."  *Id.*  They consider whether the transfer is in the interest of justice.  They include congestion of court dockets and the relationship of the jury and the community to the underlying case, creating a "local interest in deciding [the] local controvers[y]" there.  *Id.* (quoting *Jumara*, 55 F.3d at 879).  Depending on the nature and the facts of the case, these factors overlap and are intertwined.

*Delay in Filing*

As a threshold matter, plaintiffs contend that Sikorsky's delay in filing this motion should preclude transfer. When Sikorsky filed its motion for *forum non conveniens* dismissal, it did not alternatively request transfer to the District of Connecticut. It filed its present motion nearly two months after the denial of its *forum non conveniens* motion.

According to plaintiffs, waiting to move for transfer until after we denied its *forum non conveniens* motion to dismiss was an intentional ploy by Sikorsky to delay proceedings and create multiple opportunities for forum shopping.[13] Plaintiffs argue Sikorsky should not be rewarded for such gamesmanship.[14]

Sikorsky maintains that it filed its *forum non conveniens* motion in the good faith belief that the motion would be granted and the case would proceed in Canada.[15] So, it argues, it did not include a request to move to a more convenient forum in the United States.[16] Sikorsky also contends that plaintiffs have not identified any prejudice resulting from its purported delay in moving to transfer.[17]

A party's delay in moving for transfer may be considered in a Section 1404(a) analysis. But, it is not dispositive.

Parties seeking a change in venue must do so with "reasonable promptness." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) (quoting

---

[13] Pls.' Mem. of L. in Opp'n to Defs.' Mot. to Transfer Venue 1–3, 7–9, ECF No. 52-2 ["Pls.' Opp'n"].

[14] *Id.* at 3.

[15] Defs.' Mem. of L. In Reply to Pls.' Opp'n to Their Mot. to Transfer Pursuant to 28 U.S.C. § 1404(a) 9, ECF No. 53 ["Sikorsky's Reply"].

[16] *Id.* at 8–9.

[17] *Id.* at 8.

*Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989)); *see also McGraw-Edison Co. v. Van Pelt,* 350 F.2d 361, 364 (8th Cir. 1965). If a party fails to act promptly, the court expends "time and effort that might become wasted upon transfer." *In re Wyeth*, 406 F. App'x 475, 477 (Fed. Cir. 2010). Thus, a party's delay in moving to transfer may weigh in favor of denying the motion. *Id.*

Sikorsky was not required to move to transfer venue simultaneously with its *forum non conveniens* motion. It did not unreasonably delay filing its transfer motion. It filed the motion only two months after we denied the *forum non conveniens* motion. Also, we denied Sikorsky's request for a stay of discovery and ordered discovery to proceed while the motion was pending.[18] Thus, because the delay did not prejudice the plaintiffs and did not impede the progress of the case, we will not consider it in our analysis.

*Private Interest Factors*

Plaintiffs' Preferred Forum

The plaintiff's choice of forum is typically given "paramount consideration." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). A plaintiff's choice is presumed to be based on convenience. *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *Piper Aircraft*, 454 U.S. at 256. However, when a plaintiff's chosen forum is

---

[18] Order, Nov. 25, 2024, ECF No. 50 (denying Sikorsky's Motion to Stay Discovery Pending Decision on Transfer); Order, Nov. 25, 2024, ECF No. 51 (granting Plaintiffs' Motion to Compel Discovery and ordering Sikorsky to serve responses to plaintiffs' requests for production of documents); Order, Dec. 17, 2025, ECF No. 57 ("There is no reason to stay discovery pending disposition of the outstanding motion to transfer. The defendants will be required to respond to discovery no matter where the case is tried either here or in the District of Connecticut.").

"neither his home nor the situs of the occurrence upon which the suit is based," it does not readily suggest that the choice was based on convenience. *Id.* (quoting *High River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 498–99 (M.D. Pa. 2005)). Therefore, a plaintiff's choice of forum receives less deference if the plaintiff does not reside there or if the district has "no material relation or significant connection" to the facts giving rise to the lawsuit. *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010).

Sikorsky argues that plaintiffs' choice is entitled to little deference because Pennsylvania is neither the plaintiffs' home forum nor the "location of the occurrence upon which the suit is based."[19] Plaintiffs urge us to conclude, as we did previously, that their choice is entitled to more deference than is typically afforded a foreign plaintiff because their choice to litigate in Pennsylvania was based on convenience and practical issues of litigating the case.[20]

Because the Eastern District of Pennsylvania is not home to the plaintiffs, we do not accord their choice of forum paramount consideration. However, as we explained in our *forum non conveniens* opinion, there are significant ties to this district.[21] Sikorsky conducted essential activities at its Coatesville facility, which it lauded as the "Home of the CH-148."[22] The subject helicopter was at the Coatesville facility for two years.[23]

---

[19] Sikorsky's Br. 10–12.

[20] Pls.' Opp'n 10.

[21] *Cousins*, 2024 WL 4429061, at *5–6.

[22] *Id.* at *6.

[23] *Id.*

During that time Sikorsky installed "Block 2 upgrades" to the helicopter's software and structural systems, which included the addition of "mission critical components."[24]   The upgrades marked the end of the production process and were required to obtain final certification of the CH-148 as operational.[25]   Sikorsky conducted flight testing in Coatesville.[26]  It delivered the CH-148 to the Canadian military, placing it into the stream of commerce from the Eastern District of Pennsylvania.[27]

If there were no connections to this forum other than the plaintiffs' attorneys having their offices here, the foreign plaintiffs' choice of forum would receive substantially less deference.  But, that is not the case.  This is not a forum having no connection to the defendant and the issues.  The connections to this district are not insignificant.  They inform the analyses of the choice of forum and the convenience to the parties and the witnesses.  In short, the convenience factor lends support to the plaintiffs' choice of this forum.  Therefore, although the foreign plaintiffs' choice is given less deference than is given to at-home plaintiffs, their choice is entitled to more deference than is usually given a foreign plaintiff's choice because they considered convenience.[28]

Defendant's Preferred Forum

The defendant's forum preference is a consideration.  *Jumara*, 55 F.3d at 879.

---

[24] *Id.* at *7; First Lange Decl. ¶¶ 8–12.

[25] *Cousins*, 2024 WL 4429061, at *7; First Lange Decl. ¶¶ 9–10.

[26] First Lange Decl. ¶¶ 11–12.

[27] *Id.* ¶¶ 9–10.

[28] Sikorsky asks us to consider evidence that plaintiffs' choice was motivated by a desire to shop for the forum most likely to deliver a favorable result.  Sikorsky's Br. 11–12.  It claims that plaintiffs selected the Eastern District of Pennsylvania because they "believe that this Court offers the possibility of additional damages than a Connecticut Court."  *Id.* at 12.  It offers nothing to support this belief.

Standing alone, it does not override the plaintiffs' choice.  The defendant must show that its choice is founded on convenience for the parties and the witnesses.  Its choice is considered together with the other private interest factors.

Sikorsky prefers the District of Connecticut because its headquarters is located in Stratford—about 15 miles from the courthouse in New Haven, Connecticut.[29]  Although we consider this proximity, it alone does not outweigh the plaintiffs' preferred forum.  Sikorsky has not demonstrated that litigating this action near its headquarters will be more convenient for all witnesses, not just the former employees it has identified as involved in the design phase.

Place Where the Claim Arose

Sikorsky contends that plaintiffs' claims arose over the Ionian Sea, where the injury took place.[30]  It argues that the only US forum with a nexus to the alleged tortious conduct is Connecticut where the CH-148 and the EFCS were designed.[31]  Because neither the injury nor the tortious conduct occurred in Pennsylvania, Sikorsky argues, this factor favors transfer.[32]

Plaintiffs argue that a products liability action does not have a single situs.[33]  They contend that Sikorsky worked on the CH-148 in a number of different states, including Pennsylvania.[34]  They claim that because the relevant conduct was not limited to

---

[29] *Id.* at 12.

[30] *Id.* at 13.

[31] *Id.* at 13.

[32] *Id.* at 13–14.

[33] *Id.* at 12–13.

[34] *Id.* at 12–14.

Connecticut, this factor does not favor transfer.[35]

Courts in the Third Circuit have taken different approaches to determining where a products liability claim arises. Some hold that the claim arises where the product was used and the injury occurred. *Blankenship v. Graco Child.'s Prods., Inc.*, Civ. No. 11-04153, 2011 WL 4712419, at *3 (E.D. Pa. Oct. 6, 2011); *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 198 (E.D. Pa. 2008) (citations omitted). Others accord little weight to the place of injury because locus of the accident is generally unimportant in a products liability action. *Trias v. QVC, Inc.*, Civ. No. 20-813, 2020 WL 2769585, at *2–3 (E.D. Pa. May 28, 2020) (quoting *Lempke v. Gen. Elec., Co.*, Civ. No. 10-5380, 2011 WL 3739499, at *5 (E.D. Pa. Aug. 25, 2011)). Yet, others hold that a products liability claim arises where the product was designed, manufactured, marketed, and/or distributed. *Cent. Constr. Mgmt., LLC v. Strongwall Indus., Inc.*, Civ. No. 15-7342 (ES), 2016 WL 706197, at *4 (D.N.J. Feb. 22, 2016) (citing *Cromar v. Johnson & Johnson*, Civ. No. 06-1867, 2006 WL 3313955 at *4 (D.N.J. Nov. 13, 2006)).

In this products liability case, we conclude that the claim arises where the tortious conduct occurred. It is where the helicopter was manufactured, designed, and delivered. It was manufactured in several states, designed in Connecticut and New York, and placed into the stream of commerce in Pennsylvania. No party has suggested that evidence from the crash site will be relevant to the claims or the defenses.

Because the place of injury is not significant to the claims in this action, we look to the locus of the alleged culpable conduct to determine where the claim arose. Some of

---

[35] Pls.' Opp'n 14.

the alleged tortious conduct occurred in Connecticut and some in other states, including Pennsylvania. Plaintiffs' theory is that the accident was caused by the defectively designed EFCS.[36]   Sikorsky did its part in the design of the CH-148 and EFCS in Connecticut.[37]   It maintained control of the design work by third parties from its Connecticut headquarters.[38]

Connecticut is not the only location where Sikorsky's activities occurred. As we have already noted, Sikorsky performed critical work on the CH-148 at its Pennsylvania facility. It installed upgrades, conducted flight testing, certified the helicopter, and delivered it to the DND at Coatesville.

Sikorsky argues that because these are "manufacturing activities," they have no bearing on plaintiffs' defective design claims.[39]   We disagree. As Sikorsky itself argued in its *forum non conveniens* motion, "[i]t is not clear what the exact location of the wrongful act was, as Plaintiffs allege multiple wrongful acts. Indeed, the helicopter was designed and tested in collaboration with the Canadian government, thereby making it difficult to pinpoint the location of wrongful acts related to such claims."[40]

Sikorsky completed production of the CH-148 and placed it into the stream of commerce from Coatesville. The work and testing Sikorsky conducted at the Coatesville facility were the final steps required before the CH-148 was certified as operational.[41]   It

---

[36] Compl. ¶¶ 106–12.

[37] Second Lange Decl. ¶¶ 5–7, 16.

[38] *Id.* ¶ 17.

[39] Sikorsky's Br. 5.

[40] Sikorsky's FNC Br. 41.

[41] *Cousins*, 2024 WL 4429061, at *7.

was at Coatesville that Sikorsky had the opportunity to discover and correct the alleged design defects in the EFCS.

The flight testing conducted at Coatesville is particularly relevant. Plaintiffs' theory is, in part, that the EFCS was not designed for pilots to safely conduct typical flight maneuvers such as the one involved.[42] They allege, "[d]uring development testing, Sikorsky performed extremely limited tests of manual overrides of the Flight Director. . . . Sikorsky knew or should have known that these tests were completely inadequate to model real-world usage of the CH-148. Had Sikorsky conducted appropriate testing, they would have discovered the Command Model Attitude Bias that caused this fatal crash."[43] Therefore, the alleged inadequacies of Sikorsky's flight testing—including tests conducted in Coatesville—are directly relevant to liability.

Sikorsky performed work on the CH-148 not only in Connecticut and Pennsylvania, but also in Florida, Colorado, Minnesota, Maryland, and Alabama.[44] It outsourced design work on the EFCS to BAE Systems, which performed the work at its facility in Endicott, New York.[45] Sikorsky manufactured the CH-148 and conducted initial testing in West Palm Beach, Florida.[46] Plaintiffs' claims arise out of relevant conduct at any of these locations. The claims did not arise exclusively in Connecticut. Therefore, this factor does not favor transfer.

---

[42] Compl. ¶¶ 81–89, 93, 96.

[43] *Id.* ¶ 103.

[44] *Id.* ¶¶ 8, 10.

[45] Second Lange Decl. ¶ 17.

[46] *Id.* ¶ 18; First Lange Decl. ¶ 7.

Convenience of the Parties

Sikorsky does not contend that it would be financially inconvenient to litigate this action in the Eastern District of Pennsylvania.  Nor could it.  Sikorsky is a subsidiary of Lockheed Martin, which had $71 billion in net sales and $5.3 million in net earnings in 2024.[47]  Sikorsky sought to litigate this action in Nova Scotia, more than 800 miles from its Connecticut headquarters.  Now it claims it would be unduly burdened by litigating 160 miles away in Philadelphia.

Plaintiffs, on the other hand, have demonstrated inconvenience litigating in Connecticut.  They note that there is at least one daily direct flight from Halifax, Nova Scotia to Philadelphia.[48]  They argue that this is more convenient than traveling to Connecticut.[49]  They would have to fly to New York or Boston and take land transportation to New Haven.[50]

Sikorsky counters that the direct flight between Halifax and Philadelphia only runs from June 5th through November 4th.[51]  It argues that because there is no nonstop flight to Philadelphia the remaining seven months of the year, plaintiffs have not demonstrated significant inconvenience.[52]

---

[47]  Lockheed Martin Reports Fourth Quarter and Full Year 2024 Financial Results, https://news.lockheedmartin.com/2025-01-28-Lockheed-Martin-Reports-Fourth-Quarter-and-Full-Year-2024-Financial-Results (last visited March 19, 2025).

[48]  Pls.' Opp'n 11, n.5.  Because five of the six plaintiffs reside in Nova Scotia, our convenience analysis focuses primarily on travel from Halifax.  Compl. ¶¶ 33–34, 36–38.  One plaintiff resides in Victoria, British Columbia.  *Id.* ¶ 35.  There is no direct flight from Victoria to Philadelphia.  Traveling from British Columbia is equally as inconvenient to Philadelphia as it is to New Haven.

[49]  Pls.' Opp'n 11, n.5.

[50]  *Id.*

[51]  Sikorsky's Reply 9, n.1.

[52]  *Id.*

Travel will be easier for plaintiffs to Philadelphia than to New Haven. For at least half the year, plaintiffs can fly nonstop between Halifax and Philadelphia. During times when the nonstop flight is not available, there are connecting flights to Philadelphia.

Unlike Philadelphia, New Haven has no international airport.[53] Plaintiffs cannot fly—nonstop or indirect—to New Haven. There are no flights from New Haven to New York or Boston. Plaintiffs would have to fly to New York or Boston and then take land transportation to New Haven. Therefore, the Eastern District of Pennsylvania is more convenient for plaintiffs than the District of Connecticut.

Given Sikorsky's financial position and its willingness to litigate this case in Nova Scotia, it cannot claim inconvenience litigating in Pennsylvania. The plaintiffs will experience greater inconvenience getting to and from New Haven. The parties' convenience factor weighs against transfer.

### Convenience of the Witnesses

We assess the convenience of the witnesses "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 779. Parties, including their employees, are obligated to appear for trial in any fora. *Edwards v. Equifax Info. Servs., LLC*, 313 F. Supp. 3d 618, 623 (E.D. Pa. 2018). Therefore, we must assess the unavailability and convenience of nonparty witnesses. *Coppola*, 250 F.R.D. at 199.

Nonparty witnesses from the Canadian military and BAE Systems have information

---

[53] New Haven has a small domestic airport which is serviced by two airlines, Avelo Airlines and Breeze Airways. Fly Tweed, *About the Airport: Destinations*, https://flytweed.com/destinations/ (last visited March 19, 2025). Neither of these airlines service the airport in Halifax. HalifaxStanfield, *Airlines*, https://halifaxstanfield.ca/flights/airlines/ (last visited March 19, 2025).

relevant to this action.  Both entities participated in the design of the EFCS.[54]  The Canadian military collaborated with Sikorsky in the development of the CH-148's operating manuals and testing procedures.[55]

As we discussed in our *forum non conveniens* opinion, witnesses located in Canada are beyond compulsory process.  Even if Canadian service members were willing to testify voluntarily, restrictions on the release of information bearing on national security may preclude them from doing so in any forum.[56]  Thus, if witnesses from the Canadian military will be unavailable due to restrictions imposed by the Canadian government, they will be unavailable in either forum.

Individuals from BAE Systems' Endicott, New York facility are beyond the 100-mile limit on the subpoena power of both the Eastern District of Pennsylvania and the District of Connecticut.  For convenience of BAE Systems personnel who will appear voluntarily for trial, there is no appreciable difference between the two districts.  The BAE Systems facility in Endicott is 191 miles from the Eastern District of Pennsylvania courthouse in Philadelphia, and 219 miles from the District of Connecticut courthouse in New Haven.

Having addressed the availability and convenience of nonparty witnesses from the Canadian military and BAE Systems, we turn to nonparty witnesses who are no longer employed by Sikorsky.

In his Declaration, Lange identified four former employees living in Connecticut who participated in the design and development of the CH-148 and EFCS: Diane Bergan,

---

[54] Second Lange Decl. ¶¶ 5, 7–10, 17

[55] *Id.* ¶ 15.

[56] *Cousins*, 2024 WL 4429061, at *10–11.

In Service Support Chief Engineer and Flight Control Integrated Project Team (IPT) Lead; Bruce Boczar, Flight Control IPT Lead; Ken Wittmer, CH-148 Fly-By-Wire Control Law Design Lead; and Lance Stronk, Flight Control IPT Lead.[57]    Sikorsky contends that because these individuals and other unnamed former employees are nonparties who are beyond the scope of this court's subpoena power, Connecticut is the more convenient forum.[58]

Sikorsky does not contend that the four former Sikorsky employees would be unavailable or unwilling to participate in the litigation in Pennsylvania.  Plaintiffs point out that Sikorsky fails to address the majority of individuals it identified in discovery as having contributed to the development of the CH-148, many of whom still reside in the Coatesville area.[59]  To mitigate any inconvenience, plaintiffs offer to travel to Connecticut or conduct depositions remotely.[60]

The burden is on Sikorsky to demonstrate, with supporting documentation, the unavailability of material nonparty witnesses.  *In re U.S.*, 273 F.3d 380, 386 (3d Cir. 2001) (quoting *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 & n.2 (3d Cir. 1973)). Sikorsky has not done so.  On the contrary, it has alleviated any concern that nonparty witnesses will be unavailable.  In its *forum non conveniens* motion, it stated "most, if not all, of the U.S.-based witnesses are Sikorsky employees, who Sikorsky will ensure are

---

[57] Sikorsky's Br. 14; Second Lange Decl. ¶¶ 11–14.

[58] Sikorsky's Br. 14.

[59] Pls.' Opp'n 17–18.

[60] *Id.* at 17.

available," and "few, if any, of the U.S. witnesses will be non-parties."[61]  If it could make these witnesses available in Nova Scotia, Sikorsky can easily do so here.

That four individuals who participated in the design of the CH-148 are no longer employed by Sikorsky does not mean they would be unavailable.  Sikorsky states only that they are Connecticut residents.[62]  It does not represent that they would not testify voluntarily in Philadelphia.

In addition to the four individuals named in the Lange Declaration, Sikorsky's initial disclosures identified 66 current and former employees who may have knowledge relevant to this lawsuit.[63]  Twenty-one of them are former employees.[64]  Two lived in Pennsylvania, four lived in Florida, and eight have no last known address.[65]  The remaining seven former employees' "last known business address" is listed as Sikorsky's Stratford headquarters.[66]  Sikorsky offers no evidence identifying where any of these former employees currently reside, only that they once resided in Connecticut.  Nor has it represented that they would be unavailable.

During *forum non conveniens* discovery, plaintiffs served Interrogatories requesting the names and addresses of "all current and former employees of the Sikorsky

---

[61] Sikorsky's FNC Br. 27.

[62] Lange does not specify where they live in Connecticut.  At the time Sikorsky served its initial disclosures, Boczar and Stronk were still employed.  Their addresses were listed as Sikorsky's headquarters.  Defs.' Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1), § 1 (attached as Ex. B to Pls.' Opp'n), ECF No. 52-4 ["Sikorsky's Init. Discs."].  Bergan is listed as a former employee with a "last known business address" at Sikorsky headquarters.  *Id.*  Wittmer is listed as a former employee with no address.  *Id.*  Sikorsky does not explain how it knows these witnesses still reside in Connecticut.

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.*

Defendants who participated in any aspect of the CH-148's design, development, manufacture, and/or testing that occurred at the Sikorsky Defendants' Coatesville, Pennsylvania facility."[67]  In response, Sikorsky identified 269 employees, 181 of whom are former employees.[68]  Of the 181 former employees, 138 of them last lived in Pennsylvania.[69]

The design work performed at Sikorsky's headquarters is not the only relevant evidence in this case.  Witnesses with knowledge of the CH-148's manufacture and testing are relevant to plaintiffs' claims.  According to Sikorsky's own discovery responses, many of these witnesses are former employees residing in Pennsylvania.

Sikorsky's former Chief Test Pilot, Rick Becker, resides in this district.[70]  He participated in evaluating the CH-148's operation during flight maneuvers.[71]  He test flew the CH-148.[72]  His testimony is critical.  Becker resides in Upper Chichester, Pennsylvania.[73]  If the case proceeds in Connecticut, more than 100 former Sikorsky employees last known to be living in Pennsylvania—including Becker—will be beyond the court's subpoena power.

Considering that Sikorsky has not demonstrated the unavailability of Connecticut-

---

[67] Interrog. No. 1 (attached as Ex. A to Pls.' Opp'n), ECF No. 52-4.

[68] *Id.*

[69] *Id.*

[70] *Id.* at Interrog. No. 15; Sikorsky's Init. Discs., § 1.

[71] Interrog. No. 15.

[72] Sikorsky flies first CH-148 Cyclone, https://www.shephardmedia.com/news/defence-helicopter/sikorsky-flies-first-ch-148-cyclone/ (Nov. 17, 2008) ("The CH-148 - which features a fly-by-wire control system was flown by Sikorsky Test Pilots John Armbrust and Rick Becker.").

[73] Sikorsky's Init. Discs., § 1.

based nonparty witnesses, and that nonparty witnesses with relevant information reside in the Eastern District of Pennsylvania, we conclude this factor does not weigh in favor of transfer.

Location of Books and Records

Sikorsky argues, as it did in its *forum non conveniens* motion, that the location of documentary evidence favors transfer because it closed its Coatesville facility three years ago and moved its property to other locations.[74]

As we explained then, the ease of electronic discovery has diminished the importance of the physical location of records in assessing convenience.[75]  Documents can be produced electronically in any location.  Indeed, Sikorsky has conceded that "all U.S.-based evidence that is relevant to Plaintiffs' claims is in Sikorsky's possession" and can be electronically transferred.[76]  To the extent there are relevant records in the Canadian military's possession, Canadian national security restrictions on its production in US litigation and protections from discovery make it equally unavailable in Connecticut and Pennsylvania.[77]

Because Sikorsky can produce records within its control in either forum, this factor does not inform the transfer analysis.

*Public Interest Factors*

Having weighed the private factors, we now consider the public interest factors.

---

[74] Sikorsky's Br. 15.

[75] *Cousins*, 2024 WL 4429061, at *8, n.73.

[76] Sikorsky's FNC Br. 21–22.

[77] *See Cousins*, 2024 WL 4429061, at *10–13.

The parties agree that three of the public interest factors—enforceability of the judgment, public policies, and the familiarity of the trial judge with applicable law—have no impact in an action arising under federal law.[78]  They are neutral.

Practical Issues with Trial

We consider whether there are any practical considerations that "could make the trial easy, expeditious, or inexpensive."  *Jumara*, 55 F.3d at 879.

Plaintiffs argue that this factor does not weigh in favor of transfer.  They contend that because the evidence is located in many different places, no single location will be more convenient or cost efficient for everyone.[79]

We agree.  No matter where the case proceeds, trial will be more costly for some parties and witnesses than others.  If the case is tried in the Eastern District of Pennsylvania, Sikorsky will incur travel and lodging expenses for its Connecticut-based employees and former employees.  If the case is tried in the District of Connecticut, the Pennsylvania-based witnesses will incur those expenses.  The plaintiffs and other Canadian witnesses will incur travel and lodging costs in either forum.  Sikorsky can more readily bear the costs of litigating the case in a less convenient forum than the plaintiffs can in a forum less convenient to them and their witnesses.  Thus, this factor bolsters plaintiffs' choice of forum and does not favor transfer.

Administrative Difficulties Flowing from Court Congestion

We consider the relative congestion of the dockets in the Eastern District of

---

[78] Sikorsky's Br. 15–16; Pls.' Opp'n 21, 23–24.

[79] Pls.' Opp'n 21.

Pennsylvania and the District of Connecticut.  There are 424 pending cases per judge in the Eastern District of Pennsylvania and 317 cases per judge in the District of Connecticut.[80]  On the other hand, the median time from filing to disposition of a civil case is 4.6 months in the Eastern District of Pennsylvania and 8.1 months in the District of Connecticut.[81]  The median time from filing to trial of a civil case in the Eastern District of Pennsylvania is 26.6 months, compared to 40.5 months in the District of Connecticut.[82]

Although the Eastern District of Pennsylvania has a heavier caseload than the District of Connecticut, this district resolves cases quicker.  Consequently, there are no administrative difficulties flowing from court congestion in the Eastern District of Pennsylvania.

Local Interest in Deciding Local Controversies at Home

Sikorsky argues that Pennsylvania has minimal interest in this litigation.  It notes that neither party is at home here; Sikorsky no longer conducts any operations in Pennsylvania; the subject helicopter was not for sale in Pennsylvania or any other US market; and the design work giving rise to plaintiffs' claims did not take place in Pennsylvania.[83]  Sikorsky contends that Connecticut's local interest, on the other hand, is significant because it is headquartered there and continues to develop its products in Stratford.[84]

---

[80]    United States District Courts – National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/2024-12/fcms_na_distprofile0930.2024.pdf.

[81]  *Id.*

[82]  *Id.*

[83]  Sikorsky's Br. 18.

[84]  *Id.*

Plaintiffs concede that Connecticut has an interest in this litigation.[85]  But, they insist that Pennsylvania has one as well, citing our previous holding that Pennsylvania's interest in this litigation stems from Sikorsky's work at the Coatesville facility.[86]

We have already determined that Pennsylvania has a local interest in this litigation.[87]  To reiterate, the Commonwealth has an interest in regulating the behavior of corporations that operate here.  The subject helicopter was placed into the stream of commerce from Coatesville, giving Pennsylvania a reputational interest in the safety of a product produced here.  Although Sikorsky has since closed its Coatesville facility, the Commonwealth still has an interest in the outcome of this litigation.

Connecticut's interest is stronger.  Design work on the CH-148 was conducted at Sikorsky's Stratford headquarters, giving Connecticut a significant interest in redressing tortious conduct that allegedly occurred there.  Connecticut has an ongoing interest in regulating the conduct of one of its largest corporations and ensuring the safety of products still being produced there.  Sikorsky is a large corporation which controls all operations from its Stratford headquarters.  It is Connecticut's ninth largest employer, employing 7,900 people.[88]  It continues to design and market its helicopters from its Connecticut headquarters.[89]

Because Connecticut has a stronger local interest in deciding this controversy than

---

[85] Pls.' Opp'n 23.

[86] *Id.* at 22–23.

[87] *Cousins*, 2024 WL 4429061, at *15–16.

[88] Pls.' Opp'n 11 (citing *Healthcare Companies Lead the Way Among State's Largest Employers*, https://ctbythenumbers.news/ctnews/healthcare-companies-lead-the-way-among-states-largest-employers (January 16, 2023)).

[89] Sikorsky's Br. 18.

Pennsylvania, this factor favors transfer.  But, that interest does not outweigh those factors that weigh against transfer.

## Conclusion

After carefully considering the private and public interests, we conclude that the balance weighs in favor of the case remaining in this district.  Sikorsky has not demonstrated that litigating the case in the Eastern District of Pennsylvania will cause such inconvenience or injustice as to override plaintiffs' choice of forum.  Therefore, we shall deny Sikorsky's motion to transfer.