**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOANNE COUSINS, on behalf of the ESTATE OF | : | |
| MATTHEW COUSINS and on behalf of his | : | **CIVIL ACTION** |
| DOHSA beneficiaries, et al. | : | **No. 2:23-cv-02629** |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| SIKORSKY AIRCRAFT CORPORATION, et al. | : | |
| Defendants | : | |

**PLAINTIFFS' PETITION FOR APPROVAL AND APPORTIONMENT**
**OF SETTLEMENT PURSUANT TO SECTION 30303 OF THE**
**<u>DEATH ON THE HIGH SEAS ACT</u>**

For the reasons set forth in their accompanying Memorandum of Law (incorporated herein

by reference), and Exhibits A-G, which have been filed under seal, the plaintiffs, by and through

their undersigned counsel, respectfully request the Court approve this settlement and the suggested

apportionment of the settlement proceeds pursuant to the Death on the High Seas Act, 46 U.S.C.

§ 30303 and the related Estate claims made pursuant to the Pennsylvania Survival Act, 42 P.S.§

8302. Plaintiffs additionally ask that the Court approve the attorneys' fees and costs related to this

litigation and the disbursement of the settlement proceeds.

A proposed Order is attached for the Court's consideration.

RAYNES & LAWN

By: /s/ *Stephen E. Raynes*
_____
Stephen E. Raynes, Esquire
2400 Market Street, Suite 317
Philadelphia, PA 19103
215-568-6190
*Counsel for Plaintiffs*

Date: <u>June 27, 2025</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOANNE COUSINS, on behalf of the ESTATE OF | : | |
| MATTHEW COUSINS and on behalf of his | : | **CIVIL ACTION** |
| DOHSA beneficiaries, et al. | : | **No. 2:23-cv-02629** |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| SIKORSKY AIRCRAFT CORPORATION, et al. | : | **JURY TRIAL DEMANDED** |
| Defendants | : | |
| | : | |

## ORDER

And now this _____ day of _____, 2025, upon consideration of Plaintiffs' Petition for Approval and Apportionment of Settlement pursuant to the Death on the High Seas Act, 46 U.S.C.A. § 30303 and the related Estate claims made pursuant to the Pennsylvania Survival Act, 42 P.S. § 8302, and Defendants' reply thereto, it is hereby **ORDERED** that Plaintiffs' Motion is **GRANTED**. After careful consideration of the proposed apportionment of the settlement proceeds among the DOHSA beneficiaries and the related Estate claims made pursuant to the Pennsylvania Survival Act, 42 P.S. §8302 – as set forth more fully in Exhibits B-G of Plaintiffs' Petition which were filed under seal – the apportionment of the settlement proceeds is hereby approved. The attorney fees and costs, as set out in Exhibit A, which was filed under seal, and incorporated into Exhibits B-G, are approved. The settlement proceeds will be distributed as detailed in Exhibits B-G to the Petition.

BY THE COURT:

_____
Hon. Timothy J. Savage, U.S.D.J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOANNE COUSINS, on behalf of the ESTATE OF | : | |
| MATTHEW COUSINS and on behalf of his | : | **CIVIL ACTION** |
| DOHSA beneficiaries, et al. | : | **No. 2:23-cv-02629** |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| SIKORSKY AIRCRAFT CORPORATION, et al. | : | |
| Defendants | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PETITION FOR APPROVAL AND APPORTIONMENT OF SETTLEMENT PURSUANT TO SECTION 30303 OF THE DEATH ON THE HIGH SEAS**

## I.    INTRODUCTION

This lawsuit stems from an April 29, 2020 incident in which the Plaintiffs' six decedents – all members of the Canadian Armed Forces – suffered fatal injuries when a Sikorsky CH-148 Cyclone maritime helicopter crashed into the Ionian Sea off the coast of Greece.  Just before the crash, the helicopter's fly-by-wire Electronic Flight Control System ("EFCS") overrode the pilots' commands, and the helicopter plunged at high speed into the sea.

As described more fully in Plaintiffs' 47-page Complaint (Dkt. No. 1), the Plaintiffs intended to prove that the incident was caused by the defective design and inadequate testing by the Sikorsky Defendants of the helicopter's EFCS.  Sikorsky has denied that it bore any responsibility for the incident.

Plaintiffs sought recovery for their losses and damages pursuant to the Death on the High Seas Act, codified at 46 U.S.C. §30301, *et seq.* ("DOHSA") and the Pennsylvania Survival Act, 42 P.S. §8302, which Plaintiffs believe can supplement DOHSA in the Third Circuit pursuant to *Dugas v. National Aircraft Corp.*, 438 F.2d 1386 (3rd Cir. 1971).  In addition to arguing that *Dugas*

is no longer viable after *Dooley v. KAL*, 524 U.S. 116 (1998), Sikorsky has asserted that this litigation should be dismissed, and that Plaintiffs be compelled to proceed in Canada. Sikorsky sought alternatively to have this case transferred to Connecticut.

After two mediations, almost two years of contested litigation, and the exchange of tens of thousands of pages of documents, the parties have recently reached a settlement. The financial terms of the settlement are detailed in the Exhibits accompanying this Petition which this Court has permitted to be filed under seal. (Dkt. No. 65).

The Plaintiffs here petition the Court to approve the parties' settlement, and the suggested apportionment of the settlement proceeds between and among the DOHSA beneficiaries and the decedents' estates as set out in the accompanying exhibits. Plaintiffs additionally ask that the Court approve the attorneys' fees and costs related to this litigation and the disbursement of the settlement proceeds.

## II.    THE LITIGATION

The Canadian Armed Forces members killed in the April 2020 crash were all based at the Shearwater facility in Nova Scotia, Canada. The decedents' families sought legal advice from the Wagners law firm based in Halifax, NS. Because of the depth of its experience in representing victims of aircraft disasters, the Canadian law firm of CFM Lawyers, LLP of Vancouver, B.C. was asked to participate in representing the families. The Incident Helicopter – a Sikorsky CH-148 – is a military version of the Sikorsky commercial helicopter S-92; significant work on both helicopters had taken place at Sikorsky's facility in Coatesville, PA. The Philadelphia based law firm of Raynes & Lawn had previously represented sixteen Canadian victims of a crash of a Sikorsky S-92 that occurred off the coast of Newfoundland, CA and has represented victims in a number of helicopter and aviation accidents. The three law firms agreed to work jointly on behalf

of the decedents' estates and families. The representative of each estate entered into a fee agreement with Raynes & Lawn for a fee of one third of the recovery after deducting the costs of litigation. The clients consented to the sharing of the fee between the three firms, which did not result in any increase in the fee charged to the clients.

Following retention, Plaintiffs' counsel notified Sikorsky's General Counsel and Sikorsky's outside lead trial attorney that Plaintiffs' counsel would be representing all six families. All counsel knew each other through prior litigation and agreed to explore pre-suit mediation.

In advance of the mediation, Plaintiffs prepared and supplied to Sikorsky a video for each family, which included interviews with family members, friends, and fellow members of the CAF.[1] The settlement videos were supplemented by written descriptions of the families' losses as well as by eighteen expert reports from economists, actuaries, benefit specialists, and persons with industry-specific knowledge setting forth the economic damages stemming from the deaths of each of the decedents. Plaintiffs also consulted with and produced reports from two liability experts who had aircraft flight and design experience with respect to EFCSs. The experts based their reports on the findings made in the Canadian Armed Forces Flight Safety Investigation Report ("FSIR") and the report of the Board of Inquiry.

The parties agreed to have Mr. Larry Pollack of JAMS NYC mediate the case because of Mr. Pollack's extensive experience in litigating and mediating similar complex, multi-national cases. For the February 2023 mediation, Plaintiffs and Defendants submitted extensive briefs, regarding not only the facts but also the legal issues relating to venue and choice of law. Unfortunately, the initial mediation before Mr. Pollack did not succeed. In July 2023, Plaintiffs

---

[1] In Exhibit A, plaintiffs provide confidential links to the six videos.

filed their Complaint, distilling the claims that Plaintiffs had previously presented to Sikorsky and to Mr. Pollack.

In September 2023, the Sikorsky Defendants filed a motion to dismiss the lawsuit based on *forum non conveniens*. (Dkt. No. 16). The parties engaged in several months of discovery focused solely on the *forum non conveniens* issue. The Sikorsky Defendants produced nearly 10,000 pages of documents in response to Plaintiffs' discovery requests. Because of the complexity of the *forum non conveniens* issue – particularly as related to Canadian law and United States restrictions on the international sale of arms – the Plaintiffs retained several experts to respond to Defendants' motion, including three experts on Canadian law and one expert on the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. §§ 120-130 (1995). As the Court is aware, the parties together submitted hundreds of pages of briefing, expert materials, and exhibits relating to the dismissal motion. (Dkt. Nos. 16, 33, 36, 37). The Court held oral argument on the Motion to Dismiss on *forum non conveniens* on September 17, 2024. On September 30, 2024, this Court issued a 40-page precedential opinion denying the Sikorsky Defendants' Motion to Dismiss reported at *Cousins on behalf of Estate of Cousins v. Sikorsky Aircraft Co*rp., 752 F.Supp.3d 443 (E.D. Pa. 2024)

The Sikorsky Defendants next moved to transfer the case to their home District of Connecticut. (Dkt No. 47) Again, the parties presented hundreds of pages of briefing and exhibits to the Court (Dkt. Nos. 47, 52, 53). This Court issued a lengthy opinion denying Defendants' motion. *See Cousins on behalf of Estate of Cousins v. Sikorsky Aircraft Corporation,* 2025 WL 918435 (E.D. Pa. Mar. 26, 2025).

During the pendency of the Defendants' motion to transfer, the parties began to engage in substantive discovery as directed by this Court's Order of November 25, 2025. (Dkt. No. 51). The

exchange of discovery was impacted by the fact that many of the documents involved in Sikorsky's design of the CH-148 and its EFCS are subject both to US export controls (most notably ITAR) and to Canadian export controls (most notably the Canada Evidence Act ("CEA")).

Much of the discovery related to this accident were ITAR-restricted documents which needed to be reviewed by the Canadian Department of Justice ("DOJ") for compliance with the CEA before the documents could be released to Plaintiffs' counsel.  Under ITAR requirements, Sikorsky needed US State Department approval for the DND to share the ITAR documents with the unit at the DOJ which reviews classified military documents.  All counsel worked together to secure permission under ITAR for the DOJ to review the documents.

As of early April 2025, tens of thousands of documents had been provided by the Sikorsky Defendants to the Canadian DOJ for its review.

While the DOJ review was pending, the parties agreed to return to Mr. Pollack for a second attempt to mediate Plaintiffs' claims.  This time, the parties met with success.  After a full day mediation session on April 23, 2025, the parties agreed in principle to a confidential settlement to resolve all of Plaintiffs' claims.  Plaintiffs' counsel asked Mr. Pollack to allocate the total settlement among the six estates.  All of the clients have consented to the settlement amount as recommended by Mr. Pollack.  The representatives of all the estates have signed the Conditional Full Release and Settlement Agreement prepared with participation by all counsel.  Sikorsky's insurers have delivered the settlement funds to Plaintiffs' counsel where the moneys are being held in a client escrow account until the Court rules on this Petition.  All aspects of the settlement, except for the issues presented in this Petition, have been resolved.

**CRITICAL LEGAL ISSUES**

**A.  Choice of Law on Damages**

As summarized in this Court's opinions, Plaintiffs demonstrated the deep connection between the Incident CH-148 and Pennsylvania and established the significant limitations on discovery and document production in Canada that kept this case in the United States and in Pennsylvania.

Had the case been litigated in Nova Scotia, as the Sikorsky Defendants argued, the damages available to the plaintiffs would have been a fraction of the amount they were able to recover through this settlement.  For example, for the three unmarried decedents (Abbigail Cowbrough, Kevin Hagen, and Matthew Pyke), the damages available to their surviving non-dependent parents would likely have topped out at $30,000.  *See, for example*, *Lutley (Guardian ad litem of) v Jarvis Estate,* [1992] NSJ No 232, 113 NSR (2d) 201 (NSSC)(Awarding $15,000 ($27,200 in today's dollars) to each parent of 12-year-old decedent).

For the married decedents (Matthew Cousins, Brenden MacDonald, and Maxime Miron-Morin), non-economic damages for their spouses likely would have been in the $60,000.00 range. *See Brocke Estate v. Crowell*, 2014 NSSC 269 (Wife and four children awarded lump-sum of $195,000 ($240,000 in today's dollars); *Murray Estate v. Advocate Contracting Ltd*, 2001 NSSC 104 (Husband awarded $65,000 ($102,000 in today's dollars); *MacNeil v. Gillis*, 1995 NSCA 14 (Spouse awarded $22,000 ($38,300 in today's dollars); *Frank Estate v. Cox*, 1988 Carswell NS 177, [1988] N.S.J. No. 169 (Wife awarded $8,000 ($17,000 in today's dollars))

The award for non-economic damages to the minor children of the married decedents would likely have been in the $50,000 range.  See *Brocke Estate*, supra, ($48,000 awarded to each of four children); *Murray Estate v. Advocate Contracting Ltd*, 2001 NSSC 104 (Minor children

awarded between $35,000 – $40,000 ($55,000 - $63,000 in today's dollars); *MacNeil v. Gillis*, 1995 NSCA 14 (Minor child awarded $20,000 ($35,000 in today's dollars); *Frank Estate v. Cox,* 1988 Carswell NS 177, [1988] N.S.J. No. 169 (Minor children awarded $1,200-$3,000 ($2,500 - $6,300 in today's dollars))

With respect to loss of future earning capacity, few Nova Scotia cases have addressed the issue. To the extent that such damages would have been awarded, they would have been reduced by income taxes, spousal contribution, and contingency of remarriage. *MacNeil v. Gillis*, 1995 NSCA 14.

Had the case been transferred to Connecticut, a Connecticut District Court might have chosen not to apply *Dugas* and so have foreclosed plaintiffs' supplemental claims under the Pennsylvania Survival statute. Throughout the parties' mediation, the Sikorsky Defendants argued that *Dugas* was impliedly overruled by the Supreme Court's subsequent decision in *Dooley v. KAL*, 524 U.S. 116 (1998), which held that general maritime survival claims were unavailable under DOHSA. Though plaintiffs believe that the Sikorsky Defendants are mistaken, at least two Circuit Courts have held (relying on Dooley) that state law survival claims are unavailable under DOHSA. *See In re Lion Air Flight JT 610 Crash*, 110 F.4th 1007 (7th Cir. 2024), *Jacobs v. Northern King Shipping Co., Ltd.,* 180 F.3d 713 (5th Cir. 1999).

Moreover, even if a Connecticut court applied *Dugas*, it might have looked to Connecticut law to supplement DOHSA. Unlike Pennsylvania, Connecticut does not recognize a statutory survival claim in connection with wrongful death. Rather, the damages suffered by a decedent before his or her death are among the damages to be awarded under Connecticut's wrongful death statute. *See Ladd v. Douglas Trucking Co*., 203 Conn. 187, 190-91, 523 A.2d 1301 (1987). It is possible, then, that under the rationale of *Dugas* a Connecticut Court would find that Connecticut

7

law should be the reference point for DOHSA's supplemental damages and that, because there is no survival claim in Connecticut, there are no state-based supplemental damages.

Put simply, had Plaintiffs not been able to establish the degree of work in the design, testing and finally assembly of the CH-148 in Pennsylvania, and the significant limitations on discovery and document production in Canada that kept this case in the United States and in Pennsylvania, the damages outlook for the plaintiffs would have been starkly different.

### B.  Liability

Although there was little factual disagreement that the CH-148's EFCS overrode the pilot's commands and resulted in the crash, there was significant dispute as to who bore responsibility for this design feature and whether the conduct of the pilots and crew contributed to the accident.

As detailed in their Complaint (Dkt. No. 1) and in their Memorandum of Law in Opposition to the Defendants' Motion to Dismiss (Dkt. No. 33, pp. 12-24), Plaintiffs believe that Sikorsky was grossly negligent in their design of the CH-148, including:

- Sikorsky knew that it needed to test and design its EFCS so that the CH-148 could safely perform complex flight maneuvers similar to a Return-to-Target;

- Sikorsky designed a defective EFCS, in violation of industry standards, when a single point failure – such as not manually disengaging the Flight Control Director – could result in a catastrophic event;

- Sikorsky designed the cockpit alerts and controls in violation of industry standards; and

- Sikorsky approved the CH-148 Flight Manual without adequate warnings and information.

Sikorsky has consistently denied any responsibility for the accident. *E.g., see* Dkt. No. 16-1, pp. 2-13.  It noted that The Canadian Directorate of Technical Airworthiness and Engineering Support (DTAES) – a division of the Canadian Armed Forces' Technical Airworthiness Authority (TAA) – was the certifying authority for the CH-148. Sikorsky argued that the Canadian DND

tested the Flight Director and the EFCS for compliance with all the representative flight missions outlined by the government of Canada prior to Canada's acceptance of the helicopter.

Sikorsky further argued that the pilots should not have performed the Return-to-Target maneuver which was not published in the Standard Maneuver Manual. Sikorsky blamed the pilot flying for not disengaging the Flight Director while using the manual controls.

As noted by this Court, Canada and any of its employees are immune from suit in this action, and commented:

> Canada and its representatives may be immune from tort liability and its representatives may not be compelled to submit to pretrial discovery. That does not mean Sikorsky cannot blame them, in full or in part, for causing the crash. Sikorsky cannot join them as defendants and recover any damages from them.

Dkt. No. 40, p. 28.

Although the alleged negligence of a crew member cannot be imputed to another crew member, Sikorsky was intending that the pilots' recoveries should be reduced by their own negligence.

## III.  <u>DAMAGES</u>

DOHSA allows a recovery that closely mirrors traditional categories of damages for wrongful death. These damages encompass loss of support, loss of services, loss of inheritance, loss of nurture, guidance, and instruction, and funeral expenses. As noted above, DOHSA beneficiaries include a "decedent's spouse, parent, child, or dependent relative." 46 U.S.C. §30302.

- **Loss of Support:** DOHSA beneficiaries able to show loss of support will be entitled to recover the financial contributions the decedent would have made to them had he or she lived. *Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 584–85 (1974); *Oldham v. Korean Airlines, Ltd.,* 127 F.3rd 43, 53 (DC Cir. 1997); *Matter of Adventure Bound Sports, Inc.,* 858 F.Supp. 1192, 1197–98 (S.D. Ga. 1994). A spouse is generally entitled to claim loss of support from earnings over the decedent's work-life expectancy and from a projected retirement pension. *Matter of Adventure Bound Sports, Inc., supra.,*

858 F.Supp. at 1199. Children are typically permitted to recover support until the age of majority. *Id.* Parents of a decedent need not show that they are dependent on the decedent but must show pecuniary loss to recover loss of support damages. *See Dugas, supra*, 438 F.2d at 1395-96.

Like all pecuniary damages under DOHSA, loss of support awards must be reduced to "present value" through the use of a discount rate. *Matter of Adventure Bound Sports, Inc.*, 858 F.Supp. at 1209–11.

- **Loss of Services:** In addition to financial support, surviving family members are entitled to recover for a loss of household services on the part of the decedent from which they would have benefitted. *Ivy v. Security Barge Lines*, 585 F.2d 732, 740 (5th Cir. 1978); *Matter of Adventure Bound Sports, Inc., supra.,* 858 F.Supp. at 1201. Recovery for loss of services requires proof that the services "were expected and likely to be provided." *Bergen v. F/V St. Pat*rick, 816 F.2d 1345, 1350 (9th Cir. 1987), modified on reh'g, 866 F.2d 318 (9th Cir. 1989).

- **Loss of Inheritance:** Family members whose life expectancies exceed the decedent's life expectancy are permitted under DOHSA to bring a claim for loss of inheritance. *Solomon, supra.,* 540 F.2d at 788; *Matter of Adventure Bound Sports, Inc., supra.,* 858 F.Supp. at 1201, 1203-04. The plaintiffs here do not seek loss of inheritance damages.

- **Loss of Nurture, Guidance, and Instruction**: The loss to children of the nurture, instruction, guidance, and physical, intellectual, and moral training they would have received from their parent is a pecuniary loss recoverable under DOHSA. *Solomon*, *supra.*, 540 F.2d at 787-89. Damages for loss of nurture, advice, and care are also available to a spouse. *Brantuas v. Odette Therese Fishing Corp.*, 5 F.3d 535 (9th Cir. 1993).

- **Funeral Expenses:** Because the funeral expenses here were paid by the Canadian Armed Forces, the plaintiffs do not seek to recover this component of DOHSA damages. Funeral expenses are a pecuniary loss only if paid by the decedent's dependents. *Matter of Adventure Bound Sports, Inc., supra.*, 858 F.Supp. at 1202.

Plaintiffs acknowledge that, because this was not a commercial aviation accident, DOHSA does not provide for the nonpecuniary damages of "loss of care, comfort and companionship." *Helman v. Alcoa Global Fasteners, Inc.* 637 F 3d 986 (2011).

As noted above, in the Third Circuit, Plaintiffs believe that DOHSA remedies may be supplemented by state law survival remedies. *See Dugas*, 438 F.2d at 1388-92. The Sikorsky Defendants dispute this point.

10

As relevant here, Pennsylvania Survival Act damages potentially encompass loss of future earnings, pain and suffering, and pre-impact fright. With respect to loss of future earnings, plaintiffs' estates can recover without proof of dependency. *Midboe v. State Farm Mut. Auto. Ins. Co.*, 433 A.2d 1342, 1345 (Pa. 1981)("It is clear that dependency on the deceased need not be shown in a survival action because of the very nature of that action, i.e., a suit which the deceased would have brought had he survived.")

Under Pennsylvania law,

- Survival damages include the loss of earning power, less personal maintenance expenses, from the time of death through the decedent's estimated working life span. *Kiser v. Schulte*, 648 A.2d 1, 4 (Pa. 1994); *McClinton v. White*, 444 A.2d 85, 87 (Pa. 1982);

- Included in loss of earnings is the value of any fringe benefits for which the decedent would have been eligible as part of his employment. *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.*, 507 A.2d 1, 12 (1986);

- Pennsylvania uses the "total offset" method for calculating future earnings, so that future inflation shall be presumed equal to future interest rates with these factors offsetting. Thus, Pennsylvania courts are not permitted to discount lost future earnings to present value. *Helpin v. Trustees of Univ. of Pennsylvania*, 10 A.3d 267, 272–73 (Pa. 2010); *Bolubasz*, 421 A.2d at 1036-39.

In addition to loss of future earnings, Pennsylvania law additionally provides for recovery for the decedent's pain and suffering and for pre-impact fright. *See DeJesus v. U.S. Dep't of Veterans Affairs*, 2005 WL 2175174, at *9 (E.D. Pa. Sept. 6, 2005)(holding that "the weight of authority is in favor" of allowing recovery for pre-impact fright); *Potere v. City of Philadelphia*, 380 Pa. 581, 112 A.2d 100, 104 (Pa.1955) (where physical injury is "accompanied by fright or mental suffering directly traceable to the peril in which the defendant's negligence placed the plaintiff, then mental suffering is a legitimate element of damages.")

11

## IV.    THE PLAINTIFFS

Killed in the April 29, 2020 crash of the Sikorsky Cyclone helicopter were plaintiffs' decedents Matthew Cousins, Abbigail Cowbrough, Kevin Hagen, Brenden MacDonald, Maxime Miron-Morin and Matthew Pyke.

Plaintiff Joanne Cousins is the widow of Plaintiff's decedent Matthew Cousins; Matthew was born in August 1976 and was 44 years old at the time of his death. Joanne and Matthew were married on May 11, 2002, and have two children: T. C. (born in 2003) and A.C. (born in 2005). Matthew's wife Joanne and their children qualify as Matthew's beneficiaries within the requirements of DOHSA.  Joanne is the sole beneficiary of Matthew's will and was appointed the Executrix of his Estate. The losses stemming from Matthew's death and the proposed allocation of the settlement are set forth in detail at Exhibit B which is being filed under seal.

Plaintiff Tanya Cowbrough is the mother of Plaintiff's decedent Abbigail Cowbrough; Abbigail was born in July 1996 and was 23 years old at the time of her death. In addition to her mother, Abbigail was survived by her three half-brothers, one of whom August Pittarelli (born in 2000) is disabled and was dependent on in-kind support provided by Abbigail.  Abbigail did not have ongoing contact with her father John Collins and did not provide or intend to provide services to him. Tanya Cowbrough and August Pittarelli qualify as beneficiaries of Abbigail within the requirements of DOHSA. Tanya Cowbrough is the sole beneficiary of Abbigail's will and was appointed the Executrix of her Estate. The losses stemming from Abbigail's death and the proposed allocation of the settlement are set forth in detail at Exhibit C which is being filed under seal.

Plaintiff Kyle Hagen is the brother of Plaintiff's decedent Kevin Hagen.  Kevin was born in July 1989 and was 30 years old at the time of his death; Kevin was survived by his parents Lynn and Steffen Hagen. Kevin's parents qualify as Kevin's beneficiaries within the requirements of

DOHSA.  Kevin's sister Christine Hagen is the sole beneficiary of Kevin's will.  Kevin's brother Kyle was appointed the Executor of his Estate.  The losses stemming from Kevin's death and the proposed allocation of the settlement are set forth in detail at Exhibit D which is being filed under seal.

Plaintiff Amanda MacDonald is the widow of Plaintiff's decedent Brenden Ian MacDonald.  Brenden was born in March 1985 and was 35 years old at the time of his death. Amanda and Brenden were married on April 18, 2012 and have three children: B.M. (born in 2014), C.M. (born in 2017), and T.M. (born in 2018).  Brenden was additionally survived by his parents Peter and Lynn MacDonald.  Brenden's wife Amanda, the couple's three children, and Brenden's parents qualify as beneficiaries of Brenden MacDonald within the requirements of DOHSA.  Amanda is the sole beneficiary of Brenden's will and was appointed the Executrix of his Estate.  The losses stemming from Brenden's death and the proposed allocation of the settlement are set forth in detail at Exhibit E which is being filed under seal.

Plaintiff Kathryn Bowen is the widow of Plaintiff's decedent Maxime Miron-Morin; Maxime was born in February 1991 and was 29 years old at the time of his death. Kathryn and Maxime were married on December 30, 2014 and have no children. Maxime was additionally survived by his parents Marie-Claude Morin and Jean Morin. Kathryn and Maxime's parents qualify as Maxime's beneficiaries within the requirements of DOHSA.  Maxime Miron-Morin died intestate leaving his wife Kathryn as his intestate heir.  Kathryn was appointed the Administratrix of Maxime's Estate. The losses stemming from Maxime's death and the proposed allocation of the settlement are set forth in detail at Exhibit F which is being filed under seal.

Plaintiff Michael Custance is the brother of Plaintiff's decedent Matthew Pyke; Matthew was born in March 1986 and was 34 years old at the time of his death. Matthew Pyke was survived

by his parents David Pyke and Kelly Custance. Matthew's parents qualify as Matthew's beneficiaries within the requirements of DOHSA. Michael Custance is the sole beneficiary of Matthew's will and was appointed the Executor of his Estate.   The losses stemming from Matthew's death and the proposed allocation of the settlement are set forth in detail at Exhibit G which is being filed under seal.

## V.    NOTES ON DAMAGES CALCULATIONS

### A.  Estate Taxes

All of the estates are being probated in Halifax, NS where the probate tax is $1002.65 on the first $100,000 (CAD); then $16.95 for every $1000 over $100,000.  *Probate Act*, SNS 2000, c. 31, §87 (2)(d). None of the proceeds of the settlement are subject to Pennsylvania inheritance taxes.

### B.  The Unmarried Decedents

The plaintiffs do not here seek recovery for direct financial contributions made by the unmarried decedents to their parents.  However, plaintiffs do seek recovery under DOHSA for the loss of services provided by the unmarried decedents to their parents.

### C.  The Married Decedents

As outlined above, at the time of his death, plaintiff's decedent Brenden MacDonald had three minor children.  Plaintiff's decedent Matthew Cousins at the time of his death had two minor children. So as not to differentiate between the two families, plaintiffs propose that each minor child receive equal loss of nurture, loss of services, and loss of support damages under DOHSA for each year of their pecuniary loss (i.e. the period from the date of the accident until they reach majority under DOHSA at the age of 21).

### D.  Benefits Awarded Under DOHSA Are Deducted from the Survival Action

Consistent with Pennsylvania damages law, plaintiffs subtract their DOHSA recoveries from their recoveries under the Pennsylvania Survival Act to arrive at their proposed settlement allocations between DOHSA and the Survival Act.  *See Mascuilli v. United States*, 411 F.2d 867, 872–73 (3d Cir. 1969) ("Under Pennsylvania law, in case of death, the family expenses (i.e., earnings which would have gone to the support of decedent's widow and children) are properly recoverable in a Wrongful Death action and therefore excluded from the Survival Act recovery, avoiding duplication of recovery from the tortfeasor." (citing *Pezzulli v. D'Ambrosia*, 344 Pa. 643, 26 A.2d 659, 661 (1942)); *Huda v. Kirk,* 122 Pa.Cmwlth. 129, 132–33, 551 A.2d 637, 638–39 (1988), *abrogated on other grounds by Dep't of Pub. Welfare v. Schultz*, 579 Pa. 164, 855 A.2d 753 (2004) ("In a survival action, the estate is entitled to recover 'the loss of earning power less personal maintenance expenses from the time of decedent's death through decedent's estimated working lifespan...' Any amounts the decedent would have contributed to the spouse and children for their support are recoverable under the wrongful death action; any amounts so awarded, however, must be subtracted from the survival action recovery to avoid duplication of damages." (*citing Ferne v. Chadderton*, 363 Pa. 191, 69 A.2d 104 (1949)); *Kiser v. Schulte*, 538 Pa. 219, 227, 648 A.2d 1, 4 (1994) (Wrongful Death and Survival actions "are designed to compensate two different categories of claimants the spouse and/or members of the decedents family for wrongful death of the decedent, and the decedent herself through the legal person of her estate.... However, the actions for damages are cumulative and are not to overlap or result in duplication of damages." (citations omitted))

VI.    **CONCLUSION**

For the foregoing reasons – as well as those set forth in Exhibits B – G filed under seal – Plaintiffs respectfully request that the Court approve this settlement and the suggested apportionment of the settlement proceeds pursuant to Section 30303 of the Death on the High Seas Act, 46 U.S.C. § 30303 and the related Estate claims made pursuant to the Pennsylvania Survival Act, 42 P.S. § 8302.  Plaintiffs additionally ask that the Court approve the attorney's fees and costs related to this litigation and the disbursement of the settlement proceeds.

RAYNES & LAWN

By:  /s/ *Stephen E. Raynes*
    Stephen E. Raynes, Esquire
    Martin K. Brigham, Esquire
    Daniel Bencivenga, Esquire
    2400 Market Street, Suite 317
    Philadelphia, PA 19103
    215-568-6190
    *Counsel for Plaintiffs*

Date:    June 27, 2025

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JOANNE COUSINS, on behalf of the ESTATE  :
OF MATTHEW COUSINS and on behalf of his  :       **CIVIL ACTION**
DOHSA beneficiaries, et al.              :       **No. 2:23-cv-02629**
                           Plaintiffs,   :
                                         :
               v.                        :
                                         :
SIKORSKY AIRCRAFT CORPORATION, et al. :   **JURY TRIAL DEMANDED**
                           Defendants.   :

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiffs hereby certify that the foregoing Plaintiffs' Petition

for Approval and Apportionment of Settlement Pursuant to Section 30303 of the Death on the

High Seas Act, was electronically filed with the Court and served upon the parties listed below

this 27th day of June 2025 via electronic filing:

| | |
|---|---|
| Ralph V. Pagano | John C. McMeekin II |
| FITZPATRICK, HUNT & PAGANO, LLP | RAWLE & HENDERSON, LLP |
| 12 East 49th Street, 34th Floor | 1500 Market Street, 19th Floor |
| New York, NY 10017 | Philadelphia, PA 19102 |
| Ralph.pagano@fitzhunt.com | Jmcmeekin@rawle.com |

*Attorneys for Defendants Sikorsky Aircraft Corporation, Helicopter
Support, Inc., and Sikorsky International Operations, Inc.*

RAYNES & LAWN

*s/ Stephen E. Raynes*
_____
Stephen E. Raynes, Esquire
Martin K. Brigham, Esquire
Daniel Bencivenga, Esquire
2400 Market Street, Suite 317
Philadelphia, PA 19103 215-568-6190
*Counsel for Plaintiffs*

Dated: June 27, 2025

# EXHIBIT A
# FILED UNDER SEAL

# EXHIBIT A1
# FILED UNDER SEAL

**EXHIBIT A2 FILED
UNDER SEAL**

# EXHIBIT B
# FILED UNDER SEAL

**EXHIBIT C**
**FILED UNDER SEAL**

# EXHIBIT D
# FILED UNDER SEAL

# EXHIBIT E
# FILED UNDER SEAL

# EXHIBIT F
# FILED UNDER SEAL

# EXHIBIT G
# FILED UNDER SEAL